WILLIAM A. DUNN, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN.

Argued June 3, 1913—Decided December 4 1913.

1. Any ambiguity as to the meaning of the body of an act of the legislature may be resolved by resorting to its title.
2. The act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912. *p.* 808, is both for regulation and for revenue.
3. The fact that the act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912, *p.* 808, if viewed as a mere police regulation, cannot be sustained because of the amount of the license fee exacted, is immaterial, when it is found upon examination that the statute is a revenue measure.
4. The act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912, *p.* 808. does not (1) abridge the privileges or immunities of citizens of the United States, nor (2) deprive persons of property without due process of law, nor (3) deny them the equal protection of the laws, in violation of the fourteenth amendment of the federal constitution ; nor does it (4) impair the natural and inalienable rights of acquiring, possessing and protecting property, nor (5) take property for public use without just compensation in violation of paragraphs 1 and 16 of article 1 of the constitution of New Jersey.

5. The classification of municipalities made by the act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912, *p.* 808, for the purpose of fixing the minimum license fee, is that permitted by the constitution, namely, cities of the several classes and boroughs, towns and townships, and the statute in that respect is not a special law regulating the internal affairs of towns in violation of paragraph 11 of section 7 of article 4 of the constitution of New Jersey.

6. The act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912, *p.* 808, is not a special law granting corporations, associations or individuals, to which by section 12 thereof it is not to apply, exclusive privileges and immunities in violation of paragraph 11 of section 7 of article 4 of the constitution of New Jersey, in view of the fact that the tax falls alike on all persons engaged in the occupation taxed by the act, which relegates all persons engaged in that business into a class, upon which it confers the privilege of charging more than the rate of interest allowed to bankers, merchants and others to whom section 12 provides that it shall not apply.

7. The act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912, *p.* 808, will not be set aside on *certiorari* as prohibiting the doing of a lawful business unless the municipality adopts a licensing ordinance, in view of the fact that section 2 of the act provides that the governing body of the municipality "shall and may, by ordinance, provide for the licensing." &c., and may be compelled by *mandamus* to adopt such ordinance.

8. The state has the power to tax the business of the making of loans on pledges of personal property, chattel mortgages, or assignments of salary or wages, for the purpose of raising revenue by imposing a license fee thereon. The amount of the fee is for the legislature to determine, and only a violation of some constitutional provision can justify judicial interference.

9. Under the act of April 12th, 1910 (*Pamph. L., p.* 466), as amended by chapter 394 of *Pamph. L.* 1912, *p.* 808, a city of the second class has power to fix the license fee of persons engaged in the business taxed by the act for revenue purposes at the sum of $300 per annum.

10. The distinction between the power to license as a police regulation and the same power as a revenue measure is of the utmost importance. If granted with a view to revenue, the amount of the tax, if not limited by the legislature, is in the discretion and judgment of the municipal authorities; if given as a police power, it must be exercised as a means of regulation only—not as a source of revenue—and is subject to review by the Supreme Court.

On *certiorari*.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the prosecutor, *Gilbert Collins.*

For the defendant, *Horace L. Allen.*

The opinion of the court was delivered by

TRENCHARD, J.  On October 15th, 1912, the mayor and council of the city of Hoboken passed an ordinance entitled "An ordinance to provide for the licensing, regulation and control of the business of making or giving advancements or loans of money or other things of value and of taking or receiving as collateral security therefor pledges of personal property, chattel mortgages, or assignments of salary or wages, or power of attorney authorizing the execution of such assignment of salary or wages and fixing the license fees therefor, and to raise revenue by means of license fees to be imposed upon such business."

The ordinance provides that any person who shall propose to engage in the city of Hoboken in the business specified in the title of the ordinance may apply in writing to the common council for a license to do such business, and that council shall duly consider such application and grant or refuse the same.  It further provides that the license fee for the conduct of such business shall be $300 per annum, and that any person carrying on such business without a license shall be liable to a penalty therein named.

The prosecutor, who by this writ brings up for review such ordinance, was and is engaged at No. 66 Hudson street, Hoboken, in the business of making and giving advancements or loans, and of taking or receiving, as collateral security therefor, pledges of personal property or chattel mortgages.

We are of opinion that the ordinance in question is valid.

In *Bolles* v. *Newark,* 52 *Vroom* 184, a municipal ordinance based upon the act of April 12th, 1910 (*Pamph. L., p.* 466), entitled "An act to regulate and control the business of the making of loans on pledges of personal property, chattel mortgages or assignment of salary or wages," was reviewed by *certiorari* on the prosecution of a citizen whose business was injuriously affected by the ordinance.  The attack was on

the underlying statute and was successful. Mr. Justice Garrison, speaking for the Supreme Court, said:

"While the writ brings up an ordinance adopted under the power conferred by the statute cited in the syllabus, the prosecutor attacks only the statute. We have considered but one of many contentions and that is that the act is invalid as a taxing act because the title does not express such object."

It was held that this contention was sound and the ordinance was set aside.

By chapter 394 of *Pamph. L.* 1912, *p.* 808, the title of the statute cited was amended and thereafter the city of Hoboken passed the ordinance in question.

The act upon which the ordinance rests (*Pamph. L.* 1910, *p.* 466), as amended by *Pamph. L.* 1912, *p.* 808, is entitled "An act to regulate and control the business of the making of loans on pledges of personal property, chattel mortgages, or assignment of salary or wages, and to raise revenue by means of license fees to be imposed upon such business."

Section 1 thereof provides that no person shall engage in the business of making or giving advancements or loans of money or other things of value and of taking or receiving as collateral security therefor pledges of personal property, chattel mortgages, or assignments of salary or wages, or power of attorney authorizing the execution of such assignment of salary or wages, without having first obtained a license to do such business in the manner provided in the act.

Section 2 provides that the governing body of the municipality shall and may, by ordinance, provide for the licensing, regulation and control of such business, and fix the license fees.

Section 3 provides that the license fee in cities of the first class shall be not less than $500 per annum; in cities of the second class not less than $250 per annum; in cities of the third class not less than $200 per annum, and in all other cities, boroughs, towns, townships or other municipalities not less than $150 per annum.

Section 4 provides that the licensee shall report to the commissioner of banking and insurance.

Section 5 provides that the rate of interest to be charged shall not exceed twelve per cent. per annum.

Section 6 provides that the licensee shall keep a record of loans, and section 7 authorizes inspection of such record by the police authorities.

Sections 8 and 9 relate to assignments of wages.

Sections 10 and 11 treat of the penalties for the violation of the act or of an ordinance enacted thereunder.

Section 12 provides that the act shall not apply to pawn-brokers who are already regulated by law, nor to provident loan associations authorized to do business under chapter 96 of the laws of 1904, nor to those doing business under chapter 368 of the laws of 1895, nor to banks, bankers, trust companies, or savings banks, nor to loans made by manufacturers or merchants to their customers and secured by chattel mortgages.

The first reason urged why the ordinance is invalid is that "the statute does not in its enactment provide that the license fees contemplated may be imposed for revenue, and the minimum license fee authorized is too large to be sustained as regulative only."

That the statute cannot be sustained as a regulation *only* is granted. It was so held in *Bolles* v. *Newark, supra.* But the contention that it cannot be sustained as a revenue measure is without merit. The statute authorizes a license fee that yields a revenue and any ambiguity as to its meaning may be resolved by resorting to its title. *Camden, &c., Railroad Co.* v. *Briggs,* 2 *Zab.* 623, 674; *Everham* v. *Hulit,* 16 *Vroom* 53. Looking at the title we see that it is "An act to regulate and control the business of making of loans on pledges of personal property, chattel mortgages, or assignments of salary or wages, and *to raise revenue by means of license fees* to be imposed upon such business." It is therefore an act both for regulation and for revenue.

The next objection argued is that the statute upon which the ordinance rests "cannot be sustained as a police regulation."

But the fact that the statute, if viewed as a *mere* police regulation, cannot be sustained because of the amount of the license fee exacted, is quite immaterial, because, as we have seen, it is both for regulation and for revenue.

It is next urged that the statute (1) abridges the privileges or immunities of citizens of the United States; (2) deprives persons of property without due process of law; (3) denies them the equal protection of the law, in violation of the fourteenth amendment to the constitution of the United States, and (4) that it impairs the natural and inalienable rights of acquiring, possessing and protecting property, and (5) takes private property for public use without just compensation, in violation of paragraphs 1 and 16 of article 1 of the constitution of New Jersey.

We do not perceive that any of these constitutional provisions have been violated.

It will be observed that the statute in question confers a special benefit at the expense of the general public by permitting those engaged in the occupation thereby regulated and taxed to charge twelve per cent. interest. And we think a sufficient answer to every such objection is that, for the purpose of raising revenue, the legislature has imposed a tax, not upon property, but on a business to which it has accorded the right to charge double the ordinary rate of interest. This makes a class for revenue raising purposes and for that purpose includes all engaged in that occupation in such class. Whether the imposition of the tax was wise or unwise, and whether or not the privilege justified the impost, were legislative and not judicial questions.

It is next urged that the statute is a special law regulating the internal affairs of towns in violation of paragraph 11 of section 7 of article 4 of the constitution of New Jersey. Not so. The classification of municipalities made by the act for the purpose of fixing the minimum license fee is that permitted by the constitution, namely, cities of the several classes and boroughs, towns and townships. *Paul* v. *Gloucester County,* 21 *Vroom* 583; *Johnson* v. *Asbury Park,* 29 *Id.* 604.

It is next contended that the statute is a special law granting to corporations, associations or individuals, to which by section 12 it is not to apply, exclusive privileges and immunities in violation of paragraph 11 of section 7 of article 4 of the constitution of New Jersey. We think not. The tax falls alike on all persons engaged in the particular business or avocation taxed by the act. As we have seen, the statute relegates all persons engaged in the business regulated and taxed thereby into a class upon which it conferred the privilege of charging more than the rate of interest allowed to bankers, merchants and others to whom section 12 provides that it should not apply.

It is next objected that the statute is invalid in that it operates to prohibit the doing of a lawful business unless the municipality adopts a licensing ordinance. But this will not result in setting aside of the act on *certiorari*. It will be observed that section 2 provides that the governing body of the municipality "shall and may, by ordinance, provide for the licensing," &c., and so requires the adoption of such an ordinance. Such action may be compelled, when necessary, by *mandamus*.

The last point is that "the license fee required by the statute in cities of the second class and imposed by the ordinance under review is unreasonably excessive."

We think there is no substance in this contention.

It is well recognized that the state has the power to tax the business of the making of loans on pledges of personal property, chattel mortgages, or assignments of salary or wages, for the purpose of raising revenue by imposing a license fee thereon. The amount of the fee is for the legislature to determine, and only a violation of some constitutional provision can justify judicial interference. *Kane* v. *State,* 52 *Vroom* 594.

Nor is there any substance in the objection stated when regarded as an attack upon the ordinance. By the statute the legislature provides that the license fee in cities of the second class shall be not less than $250 per annum. The ordinance fixed the fee at $300 per annum. That was the exercise of a

power granted with a view to revenue and the fee fixed was within the power.

The distinction between the power to license as a police, regulation and the same power as a revenue measure is of the utmost importance. If granted with a view to revenue, the amount of the tax, if not limited by the legislature, is in the discretion and judgment of the municipal authorities; if given as a police power, it must be exercised as a means of regulation only—not as a source of revenue—and is subject to review in this court. *North Hudson County Railway* v. *Hoboken,* 12 *Vroom* 71; *Margolies* v. *Atlantic City,* 38 *Id.* 82.

The ordinance under review will be sustained, with costs.